February 8, 2006, and he signed the quarterly reports filed from May 2005 through February 8, 2006. Kaplan participated in preparing each of the quarterly reports filed with the Commission from February 14, 2002 through February 8, 2006.

132. Tomasetta and Hovanec knew, should have known, or were reckless in not knowing that each of the foregoing quarterly reports that they signed and/or reviewed materially misrepresented Vitesse's revenues, stock-based compensation expense, income, and in certain quarters accounts receivable, and made materially false and misleading disclosures and omitted material information about Vitesse's revenue recognition and stock option practices and policies.

133. Mody and Kaplan knew, should have known, or were reckless in not knowing that each of the foregoing quarterly reports that they participated in preparing, reviewed, and/or signed materially misrepresented Vitesse's revenues, income, and in certain periods accounts receivable, and made materially false and misleading disclosures and omitted material information about Vitesse's revenue recognition practices and policies.

134. Tomasetta signed Sarbanes-Oxley 302 certifications for the annual reports on Form 10-K for fiscal years 2002, 2003, 2004 and 2005, and for ten quarterly reports on Form 10-Q filed on February 14, 2003 through February 8, 2006. Hovanec signed Sarbanes-Oxley 302 certifications for the annual reports on Form 10-K for fiscal years 2002, 2003, and 2004, and for seven quarterly reports on Form 10-Q filed on February 14, 2003 through February 8, 2005. Mody signed Sarbanes-Oxley 302 certifications for the annual report on Form 10-K for fiscal year 2005, and for three quarterly reports on Form 10-Q filed between May 10, 2005 through February 8, 2006.

135. The foregoing certifications that Tomasetta, Hovanec, and Mody signed referenced in ¶ 134, state that they had reviewed the report and that (a) the report did not contain

any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading; (b) the financial statements, and other financial information included in each report, fairly presented in all material respects the financial condition, results of operations, and cash flows of Vitesse as of, and for, the period presented in the report; and that (c) Tomasetta, Hovanec and Mody had disclosed to Vitesse's auditors all significant deficiencies in the design or operation of Vitesse's internal controls and any fraud, whether or not material, that involved management or other employees who had a significant role in Vitesse's internal controls. Tomasetta, Hovanec and Mody had ample information at the time that they signed these certifications to know that they were not true.

136.   Between October 23, 1996 and March 23, 2006, Vitesse filed a total of 37 registration statements, that incorporated by reference materially false and misleading financial statements, as well as materially false and misleading disclosures from Vitesse's annual reports on Form 10-K, quarterly reports on Form 10-Q and proxy statements. Sixteen of these registration statements were filed on Forms S-3 or S-3/A, and 21 were filed on Forms S-8 or S-8 POS. Vitesse also filed a prospectus supplement on February 6, 2006, which incorporates by reference Vitesse's Form 10-K filed on December 10, 2004, and Vitesse's Forms 10-Q filed on February 8, 2005 and May 10, 2005. Tomasetta and Hovanec signed each of the 16 Forms S-3 or S-3/A that Vitesse filed on October 23, 1996, February 19, 1999, April 8, 1999, October 22, 1999, November 4, 1999, November 24, 1999, February 15, 2000, June 7, 2000 (two S-3s), September 5, 2000, December 20, 2000, May 23, 2001, June 11, 2001, May 12, 2003, December 29, 2004 and March 16, 2005. Tomasetta and Hovanec also signed each of the 19 Forms S-8 or S-8 POS that Vitesse filed from May 22, 1998 through November 23, 2004. Tomasetta and

Mody each signed two Forms S-8 that Vitesse filed on November 30, 2005 and March 23, 2006. Kaplan participated in preparing various of these registration statements during late 2001 through at least 2005.

137. Tomasetta, Hovanec, and Mody knew, should have known, or were reckless in not knowing that these registrations statements were false and misleading by their incorporation of materially false and misleading financial statements and stock option and revenue recognition disclosures from Vitesse's annual reports on Form 10-K, quarterly reports on Form 10-Q, and/or proxy statements.

### 2. Forms 4 and 5 and Proxy Statements

138. In addition, Tomasetta and Hovanec filed Forms 4 and 5 with the Commission in connection with stock option grants that each received. Tomasetta and Hovanec permitted false and misleading statements to be made in those filings. The Forms 4 and 5 were false in that they reported as a "transaction date" the purported dates of stock option grants when in fact options were never granted on those transaction dates. The false information with respect to the "transaction date" permitted Tomasetta and Hovanec to conceal the compensation that they received through the grant of in-the-money options. The Forms 4 were also misleading in that they disclosed an "expiration date," which under Vitesse's various option plans was required to be ten years from the date of grant, that suggested a particular date of grant for stock option grants when in fact options were never granted on the date implied by the expiration date. The forms filed were as follows (share totals are adjusted for stock splits in 1997, 1998 and 1999):

| Filer | Date of Filing | Form | False Transaction Date | Purported Option Grant Expiration Date | Total Shares |
|---|---|---|---|---|---|
| Tomasetta | 10/7/96 | 4 | 1/23/96 | 1/23/06 | 300,000 |
| Tomasetta | 8/8/97 | 4 | 3/19/97 | 3/19/07 | 600,000 |

52

| | | | | | |
|---|---|---|---|---|---|
| Tomasetta | 5/8/98 | 4 | 1/1/98 | 1/1/08 | 900,000 |
| Tomasetta | 4/9/99 | 4 | 10/5/98 | 10/5/08 | 760,000 |
| Tomasetta | 10/30/01 | 5 | 4/6/01 | 4/6/11 | 1,200,000 |
| Tomasetta | 3/8/02 | 4 | 10/2/01 | 10/2/11 | 720,000 |
| Tomasetta | 8/14/02 | 4 | 10/2/01 | 10/2/11 | 1,205,048 |
| Tomasetta | 8/28/02 | 4 | 10/2/01 | 10/2/11 | 1,205,048 |
| Tomasetta | 10/22/03 | 4 | 10/20/03 | 10/20/2013 | 950,000 |
| | | | | | |
| Hovanec | 9/10/96 | 4 | 1/23/96 | 1/23/06 | 180,000 |
| Hovanec | 5/8/98 | 4 | 1/1/98 | 1/1/08 | 210,000 |
| Hovanec | 3/10/99 | 4 | 10/5/98 | 10/05/08 | 160,000 |
| Hovanec | 10/30/01 | 5 | 4/6/01 | 4/6/11 | 300,000 |
| Hovanec | 3/8/02 | 4 | 10/2/01 | 10/2/11 | 230,000 |
| Hovanec | 8/14/02 | 4 | 10/2/01 | 10/2/11 | 303,245 |
| Hovanec | 10/22/03 | 4 | 10/20/03 | 10/20/2013 | 250,000 |

139.    Tomasetta and Hovanec knew, should have known, or were reckless in not knowing that they made materially false and misleading statements and disclosures in these filings that they reviewed and/or signed.

140.    Vitesse also filed proxy statements with the Commission on December 18, 2002 and December 10, 2004, wherein it solicited proxies to reelect Tomasetta and other directors to Vitesse's Board of Directors. These proxy statements disclose false grant dates for stock options issued to named executive officers including Tomasetta and Hovanec. The proxy statement filed on December 18, 2002 falsely states that stock options were granted to named executive officers on October 2, 2001, and the proxy statement filed on December 10, 2004 falsely states that stock options were granted to named executive officers on October 20, 2003. The information relating to executive compensation and stock option grants reported in the proxy statements was incorporated by reference into the annual reports on Form 10-K signed by Tomasetta and/or Hovanec and/or Mody during this period.

141.    As a result of the misconduct of Tomasetta and Hovanec, Vitesse's books and records falsely and inaccurately reflected, among other things, the grant dates of stock options,

53

revenues, stock-based compensation expense, income, and accounts receivable, and the Company's financial condition. Additionally, Tomasetta and Hovanec circumvented internal accounting controls and, by virtue of their misconduct, failed to maintain a system of internal accounting controls sufficient to provide assurances that stock option grants, revenues, income, and accounts receivable were accurately recorded to permit the proper preparation of financial statements in conformity with GAAP.

142. As a result of the misconduct of Mody and Kaplan, Vitesse's books and records falsely and inaccurately reflected, among other things, revenues, stock-based compensation expense, income, and accounts receivable, and the Company's financial condition. Additionally, Mody and Kaplan circumvented internal accounting controls and, by virtue of their misconduct, failed to maintain a system of internal accounting controls sufficient to provide assurances that the Company's revenues, income, and accounts receivable were accurately recorded to permit the proper preparation of financial statements in conformity with GAAP.

D.   **MISREPRESENTATIONS TO VITESSE'S AUDITOR**

143. In addition to the conduct alleged above by which Tomasetta, Hovanec, Mody, and Kaplan each engaged in conduct to mislead Vitesse's Auditor and to conceal their fraud through the falsification of documents, among other actions, each of them also knowingly made false and misleading representations to the Auditor in management representations letters that they signed and provided to the Auditor. These letters were provided to the Auditor in the course if its annual audits and quarterly reviews of the Company's financial statements, among other reasons.

144. In substantially similar words, the letters Tomasetta, Hovanec, Mody, and Kaplan signed and provided to the Auditor in connection with audits or reviews of the

Company's financial statements during the period from 1996 through 2006 contain the following acknowledgements:

145. "We acknowledge our responsibility for the design and implementation of programs and controls to prevent, deter and detect fraud. We understand that the term 'fraud' includes misstatements arising from fraudulent financial reporting." and that "[m]isstatements arising from fraudulent financial reporting are intentional misstatements, or omissions of amounts or disclosures in financial statements to deceive financial statement users."

146. "[W]e confirm we are responsible for the fair presentation in the consolidated financial statements of financial position."

147. "We accept and acknowledge our responsibility for establishing and maintaining effective internal control over financial reporting."

148. Each of these management letters also contains affirmative representations in respect to the Company's financial statements, financial records, transactions, and possible fraud by management or employees, as follows:

149. "The consolidated financial statements referred to above are fairly presented in conformity with accepted accounting principles generally accepted in the United States of America."

150. "We have made available to you . . . all financial records and related data"

151. "There are no . . . material transactions that have not been properly recorded in the accounting records underlying the consolidated financial statements"

152. "We have no knowledge of any fraud or suspected fraud affecting the entity involving: (a) management; (b) employees who have significant roles in internal control, or (c) others where the fraud could have a material effect on the consolidated financial statements."

55

153. These representations were false, as Tomasetta, Hovanec, Mody, and Kaplan each knew as a result of the revenue recognition fraud each of them engaged in and as a result of the stock option backdating fraud Tomasetta and Hovanec perpetrated, as detailed in this Complaint.

154. Tomasetta, Hovanec, Mody, and Kaplan also falsely stated in management representation letters provided to the Auditor during January 2002 through January 2006 that, "There have been no false statements affecting the Company's consolidated financial statements made to you."

155. In management representation letters for fiscal years 2001 through 2005, Tomasetta, Hovanec, Mody, and/or Kaplan represented in substantially similar words that, "Receivables reported in the consolidated financial statements represent valid claims against debtors for sales or other charges arising on or before the balance-sheet date and have been appropriately reduced to their estimated net realizable value." Tomasetta, Hovanec, Mody, and/or Kaplan knew that this representation was false as a result of their fraudulent revenue recognition practices.

156. In management representation letters for fiscal years 1999 through 2005, with the exception of fiscal year 2002, Tomasetta and/or Hovanec falsely represented in substantially similar words that, "(s)tock-related awards to employees have been accounted for in accordance with the provisions of APB Opinion No. 25, *Accounting for Stock Issued to Employees*.

157. Tomasetta knowingly signed false management representation letters for annual audits covering fiscal years 1996 through 1999 and 2005, and for quarterly reviews in 2005 and 2006. The letters for the annual audits are dated December 12, 2005, October 14, 1999, October 14, 1998, October 21, 1997, and October 18, 1996. The letters for the quarterly reviews are dated January 23, 2006 and July 20, 2005.

158. Hovanec knowingly signed false management representation letters for annual audits covering fiscal years 1996 through 2004, and numerous quarterly reviews from at least 1999 through 2005. These letters for the annual audits are dated, October 28, 2004, October 23, 2003, October 18, 2002, October 19, 2001, October 16, 2000, October 14, 1999, October 14, 1998, October 21, 1997, and October 18, 1996. The letters for the quarterly reviews are dated April 21, 2005, January 18, 2005, April 22, 2004, February 11, 2004, July 21, 2003, April 21, 2003, January 24, 2002, July 17, 2002, July 13, 2001, January 19, 2001, August 14, 2000, May 12, 2000, January 7, 2000, and April 7, 1999.

159. Mody knowingly signed false management representation letters for annual audits covering fiscal years 2001 through 2005, and for quarterly reviews during 2002 through January 2006. These letters for the annual audits are dated December 12, 2005, October 28, 2004, October 23, 2003, October 18, 2002, and October 19, 2001. The letters for the quarterly reviews are dated January 23, 2006, July 20, 2005, April 21, 2005, January 18, 2005, July 16, 2004, April 22, 2004, February 11, 2004, July 21, 2003, April 21, 2003, July 17, 2002, and January 24, 2002.

160. Kaplan knowingly signed a false management representation letter for the fiscal 2005 annual audit dated December 12, 2005.

161. Each of the defendants also provided false management representation letters to the Auditor that reaffirmed certain of these above letters in connection with annual audits. Each of the defendants also provided such letters in connection with the Auditors review and inclusion of their audit reports in Vitesse registration statements for securities offerings.

E. **TOMASETTA, HOVANEC, MODY AND KAPLAN PROFITED FROM THEIR SCHEMES**

162. Tomasetta, Hovanec, Mody, and Kaplan profited from their misconduct. Tomasetta and Hovanec personally benefited from their options backdating scheme by awarding

themselves in millions of dollars in potential profit as a result of the in-the-money options that they received. By exercising backdated options, each of them also actually reaped tangible financial benefits from their fraud in the amounts of millions of dollars.

163. Tomasetta and Hovanec obtained additional profits through the sale of shares of Vitesse stock, acquired largely through their exercises of Vitesse stock options, which they sold into the market at times when the price of the Company's stock was inflated by the fraud.

164. Tomasetta, Hovanec, Mody, and Kaplan also each profited by receiving cash bonuses during their fraudulent conduct. Bonuses received by Tomasetta and Hovanec were in part based on achieving financial targets, including operating income targets. If Vitesse had properly recorded compensation expense for the option grants that Tomasetta and Hovanec had backdated and repriced, then it would have recorded lower operating income results and Tomasetta and Hovanec would have received smaller bonuses. In addition, bonuses awarded to or paid to Tomasetta, Hovanec, Mody, and Kaplan during their fraud were based upon bonus plans that provided that no bonus award was considered earned, but instead was totally dependent on the officer remaining an employee at the time the bonus payments vested and were made, which was typically in one or more installments during subsequent years. Tomasetta's, Hovanec's, Mody's, and Kaplan's continued employment during their fraud therefore allowed each of them to receive their bonus payments. Had Vitesse's Board of Directors discovered their fraud earlier and terminated them, Tomasetta, Hovanec, Mody, and Kaplan would not have received their bonus payments.

## FIRST CLAIM FOR RELIEF

**Violations of Exchange Act Section 10(b) and Exchange Act Rule 10b-5**
**(All Defendants)**

165.   The Commission realleges and incorporates by reference Paragraphs 1 through 164.

166.   Vitesse, Tomasetta, Hovanec, Mody, and Kaplan, directly or indirectly, by the use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, in connection with the purchase or sale of securities, and with knowledge or recklessness: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, transactions, practices or courses of business that operated or would operate as a fraud or deceit upon other persons.

167.   By engaging in the conduct alleged above, Vitesse, Tomasetta, Hovanec, Mody and Kaplan, and each of them, directly or indirectly, violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5 [15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

**Violations of Securities Act Section 17(a)**
**(All Defendants)**

168.   The Commission realleges and incorporates by reference Paragraphs 1 through 164.

169.   Vitesse, Tomasetta, Hovanec, Mody and Kaplan, directly or indirectly, by use of the means or instruments of interstate commerce or of the mails, in connection with the offer or

sale of securities, and with knowledge, recklessness, or negligence: 1) employed devices, schemes, or artifices to defraud; 2) obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or 3) engaged in transactions, practices or courses of business which operated or would operate as a fraud or deceit upon purchasers of Vitesse securities.

170.  By engaging in the conduct alleged above, Vitesse, Tomasetta, Hovanec, Mody, and Kaplan, and each of them, directly or indirectly, violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(1), (2), and (3) of the Securities Act [15 U.S.C.§ 77q(a)(1), (2), and (3)].

### THIRD CLAIM FOR RELIEF

#### Violations of Securities Act Section 13(b)(5) and Exchange Act 13b2-1 (Tomasetta, Hovanec, Mody, and Kaplan)

171.  The Commission realleges and incorporates by reference Paragraphs 1 through 164.

172.  By engaging in the conduct alleged above, Tomasetta, Hovanec, Mody, and Kaplan knowingly falsified books, records and accounts at Vitesse, and knowingly circumvented or knowingly failed to implement a system of internal accounting controls at Vitesse subject to Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

173.  By engaging in the conduct alleged above, Tomasetta, Hovanec, Mody, and Kaplan, directly or indirectly, falsified or caused to be falsified, books, records or accounts subject to 15 U.S.C. § 78m(b)(2)(A).

174.  By reason of the foregoing, Tomasetta, Hovanec, Mody, and Kaplan, and each of them, directly or indirectly, have violated, and unless restrained and enjoined will continue to

60

violate, Section 13(b)(5) of the Exchange Act and Exchange Act Rule 13b2-1 [15 U.S.C. § 78m(b)(5); 17 C.F.R. § 240.13b2-1].

## FOURTH CLAIM FOR RELIEF

### Violations of Exchange Act Rule 13b2-2
### (Tomasetta, Hovanec, Mody, and Kaplan)

175. The Commission realleges and incorporates by reference Paragraphs 1 through 164.

176. Rule 13b2-2 of the Exchange Act [17 C.F.R. § 240.13b2-2], in relevant part, makes it unlawful for an officer or director of an issuer to, directly or indirectly: (1) make or cause to be made a materially false or misleading statement to an accountant in connection with any audit, review or examination of financial statements, or the preparation or filing of any document or report required to be filed with the Commission; or (2) omit or state, or cause another person to omit or state, any material fact necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, to an accountant in connection with: (i) any audit, review or examination of the financial statements of the issuer, or (ii) the preparation or filing of any document or report required to be filed with the Commission.

177. By reason of the foregoing, Tomasetta, Hovanec, Mody and Kaplan, and each of them, directly or indirectly, violated, and unless restrained and enjoined will continue to violate, Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2].

## FIFTH CLAIM FOR RELIEF

### Violations of Exchange Act Section 14(a) and Exchange Act Rule 14a-9
### (Vitesse and Tomasetta)

178. The Commission realleges and incorporates by reference Paragraphs 1 through 164.

179. Vitesse and Tomasetta, directly or indirectly, by use of the means or instruments of interstate commerce or of the mails, or of the facility of a national securities exchange, knowingly, recklessly, or negligently solicited proxies by means of a proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing statements which, at the time and in light of the circumstances under which they were made, were false and misleading with respect to material facts, or which omitted to state material facts which were necessary in order to make the statements made not false or misleading or which were necessary in order to correct statements in earlier false or misleading communications with respect to the solicitation of proxies for the same meeting or subject matter, in violation of Section 14(a) of the Exchange Act and Exchange Act Rule 14a-9 [15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9].

180. By reason of the foregoing, Vitesse and Tomasetta, directly or indirectly, violated, and unless restrained and enjoined will continue to violate, Section 14(a) of the Exchange Act and Exchange Act Rule 14a-9 [15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9].

### SIXTH CLAIM FOR RELIEF

**Vitesse's Violations of Exchange Act Sections 13(a) and
Exchange Act Rules 12b-20, 13a-1, and 13a-13,
and Aiding and Abetting These Violations
by Tomasetta, Hovanec, Mody, and Kaplan**

181. The Commission realleges and incorporates by reference Paragraphs 1 through 164.

182. Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Exchange Act Rules 13a-1 and 13a-13 [17 C.F.R. §§ 240.13a-1 and 240.13a-13] require issuers of registered securities to file with the Commission factually accurate annual and quarterly reports. Exchange Act Rule 12b-20 [17 C.F.R. §240.12b-20] further provides that, in addition to the information expressly required to be included in a statement or report, there shall be added such further

material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they were made, not misleading.

183. By engaging in the conduct set forth above, Vitesse violated, and unless restrained and enjoined will continue to violate Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Exchange Act Rules 12b-20, 13a-1 and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13].

184. By engaging in the conduct set forth above, Tomasetta, Hovanec, Mody, and Kaplan, and each of them, knowingly provided substantial assistance to Vitesse in its failure to file with Commission factually accurate annual and quarterly reports.

185. As set forth above, Tomasetta, Hovanec, Mody, and Kaplan aided and abetted, and unless restrained and enjoined will continue to aid and abet, violations of Exchange Act Section 13(a) [15 U.S.C. § 78m(a)] and Exchange Act Rules 12b-20, 13a-1 and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13].

## SEVENTH CLAIM FOR RELIEF

### Vitesse's Violations of Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B) and Aiding and Abetting These Violations by Tomasetta, Hovanec, Mody, and Kaplan

186. The Commission realleges and incorporates by reference Paragraphs 1 through 164.

187. Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)] requires issuers to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of its assets. Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)] requires issuers to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were

recorded as necessary to permit preparation of financial statements in conformity with GAAP and to maintain the accountability of assets.

188.  Vitesse failed: 1) to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of its assets; and 2) to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP and to maintain the accountability of assets.

189.  By reason of the foregoing, Vitesse, directly or indirectly, violated, and unless restrained and enjoined will continue to violate Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].

190.  By reason of the foregoing, Tomasetta, Hovanec, Mody, and Kaplan knowingly or recklessly gave substantial assistance to Vitesse in its failure to make and keep accurate books, records, and accounts and its failure to devise and maintain a sufficient system of internal accounting controls.

191.  As set forth above, defendants Tomasetta, Hovanec, Mody, and Kaplan, and each of them, directly or indirectly, aided and abetted, and unless restrained and enjoined will continue to aid and abet, violations of Sections 13(b)(2)(A) and 13(b)(2)(B) [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].

### EIGHTH CLAIM FOR RELIEF

**Violations of Exchange Act Rule 13a-14**
**(Tomasetta, Hovanec, and Mody)**

192.  The Commission realleges and incorporates by reference Paragraphs 1 through 164.

193. Tomasetta, as CEO, signed false certifications pursuant to Rule 13a-14 of the Exchange Act that were included in Vitesse's fiscal 2002, 2003, 2004, and 2005 annual reports, as well as ten quarterly reports on Form 10-Q filed between February 14, 2003 through February 8, 2006. Hovanec, as CFO, signed false certifications pursuant to Rule 13a-14 of the Exchange Act that were included in Vitesse's fiscal 2002, 2003, and 2004 annual reports, as well as seven quarterly reports on Form 10-Q filed between February 14, 2003 through February 8, 2005. Mody, as CFO, signed false certifications pursuant to Rule 13a-14 of the Exchange Act that were included in Vitesse's fiscal 2005 annual report, as well as quarterly reports three quarterly reports on Form 10-Q filed between May 10, 2005 through February 8, 2006.

194. By reason of the foregoing, Tomasetta, Hovanec, and Mody, and each of them, violated, and unless restrained and enjoined will continue to violate, Exchange Act Rule 13a-14 [17 C.F.R § 240.13a-14].

## NINTH CLAIM FOR RELIEF

### Violations of Exchange Act Section 16(a) and Exchange Act Rule 16a-3
(Tomasetta and Hovanec)

195. The Commission realleges and incorporates by reference Paragraphs 1 through 164.

196. At all relevant times, defendants Tomasetta and Hovanec were officers of Vitesse within the meaning of Section 16(a)(1) of the Exchange Act [15 U.S.C. § 78p(a)(1)].

197. Section 16(a) of the Exchange Act [15 U.S.C. § 78p(a)] and Exchange Act Rule 16a-3 [17 C.F.R. § 240.16a-3] require officers, directors and beneficial owners of more than ten percent of any class of equity security registered pursuant to Exchange Act Section 12 [15 U.S.C. § 78l] to file periodic reports disclosing any change of beneficial ownership of those securities.

198. Defendants Tomasetta and Hovanec filed Forms 4 with the Commission that misrepresented the purported grant dates of backdated options that they received.

199. By reason of the foregoing, defendants Tomasetta and Hovanec, and each of them, violated, and unless restrained and enjoined will continue to violate, Section 16(a) of the Exchange Act and Exchange Act Rule 16a-3 [15 U.S.C. § 78p(a); 17 C.F.R § 240.16a-3].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a final judgment:

### I.

Permanently enjoining defendant Vitesse from violating, directly or indirectly, Section 17(a) of the Securities Act and Sections 10(b), 13(a), 13(b)(2)(A), 13(b)(2)(B), and 14(a) of the Exchange Act and Rules 10b-5, 12b-20, 13a-1, 13a-13, and 14a-9 thereunder;

### II.

Permanently enjoining defendant Tomasetta from violating, directly or indirectly, Section 17(a) of the Securities Act and Sections 10(b), 13(b)(5), 14(a), and 16(a) of the Exchange Act and Rules 10b-5, 13b2-1, 13b2-2, 13a-14, 14a-9, and 16a-3 thereunder, and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13 thereunder;

### III.

Permanently enjoining defendant Hovanec from violating, directly or indirectly, Section 17(a) of the Securities Act and Sections 10(b), 13(b)(5), and 16(a) of the Exchange Act and Rules 10b-5, 13a-14, 13b2-1, 13b2-2, and 16a-3 thereunder, and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13 thereunder;

IV.

Permanently enjoining defendant Mody from violating, directly or indirectly, Section 17(a) of the Securities Act and Sections 10(b) and 13(b)(5) of the Exchange Act and Rules 10b-5, 13a-14, 13b2-1, and 13b2-2 thereunder, and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13 thereunder;

V.

Permanently enjoining defendant Kaplan from violating, directly or indirectly, Section 17(a) of the Securities Act and Sections 10(b) and 13(b)(5) of the Exchange Act and Rules 10b-5, 13b2-1, and 13b2-2 thereunder, and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13 thereunder;

VI.

Ordering defendants Tomasetta, Hovanec, Mody and Kaplan, and each of them, to disgorge their ill-gotten gains by virtue of the conduct alleged herein, and to pay prejudgment interest thereon;

VII.

Ordering defendants Tomasetta, Hovanec, Mody and Kaplan, and each of them, to pay civil money penalties pursuant to Section 20(d)(1) of the Securities Act and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 77(d)(1); 15 U.S.C. § 78u(d)(3)];

## VIII.

Pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)] bar defendants Tomasetta, Hovanec, and Mody, and each of them, from serving as officers or directors of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]; and

## IX.

Ordering such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Under Rule 38 of the Federal Rules of Civil Procedure, the Commission demands trial by jury in this action of all issues so triable.

Dated: December 9, 2010  
Washington, DC

Respectfully submitted,

*/s/ Richard E. Simpson*

Dean M. Conway  
Richard E. Simpson RS-5859  
SECURITIES AND EXCHANGE COMMISSION  
100 F Street, NE  
Washington, DC  20549-4030  
Telephone:    (202) 551-4412 (Conway)  
Facsimile:    (202) 772-9246 (Conway)  
E-mail:    conwayd@sec.gov

Counsel for Plaintiff

Of counsel:

Timothy N. England  
Margaret S. McGuire  
Deborah R. Maisel  
Richard E. Dominguez