UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

SECURITIES AND EXCHANGE COMMISSION,

                      Plaintiff,

            v.

VITESSE SEMICONDUCTOR CORP., ET AL.,

                 Defendants.

------------------------------------------------------------ x

No. 10 Civ. 9239 (JSR) (FM)


**DEFENDANTS LOUIS R. TOMASETTA AND EUGENE F. HOVANEC'S
OPPOSITION TO NU HORIZONS ELECTRONICS CORPORATION'S
<u>MOTION TO QUASH SUBPOENAS</u>**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................... 1

II.    THE AVAILABLE FACTUAL RECORD RELEVANT TO THIS MOTION ............... 1

     A.     The SEC Subpoenas Nu Horizons ........................................................ 1

     B.     Nu Horizons Produces Summaries of Witness Interviews to the SEC ................. 2

     C.     The Internal Investigation Is a Focus of Due Diligence by Potential
              Purchasers .......................................................................................... 3

     D.     The Internal Investigation Is Likely Discussed with Outside Auditors ................ 3

     E.     Nu Horizons Refuses to Provide the Court with a Complete and Accurate
              Factual Record .................................................................................... 4

III.   NU HORIZONS FAILS TO SHOW THAT THE INTERNAL INVESTIGATION
     REPORT IS PROTECTED FROM DISCLOSURE BY THE WORK PRODUCT
     DOCTRINE ............................................................................................................. 5

     A.     Nu Horizons Fails to Establish that It Did Not Waive Work Product
              Protection by Providing the Internal Investigation Report or the Results of
              the Internal Investigation to the SEC .................................................... 6

            1.     Nu Horizons fails to establish that its communications with and
                    productions to the SEC were all covered by a then-operative non-
                    waiver agreement ...................................................................... 7

            2.     Even if the putative non-waiver agreement covered the Internal
                    Investigation Report, it does not in and of itself establish that there
                    was no waiver ............................................................................ 9

     B.     Nu Horizons Fails to Establish that It Did Not Waive Work Product
              Protection by Likely Providing the Internal Investigation Report or the
              Results of the Internal Investigation to Other Third Parties ................................. 10

IV.   DEFENDANTS HAVE "SUBSTANTIAL NEED" FOR THE INTERNAL
     INVESTIGATION REPORT ................................................................................. 13

V.    CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*,
160 F.R.D. 437, 447 (S.D.N.Y. 1995) ................................................................. 12

*Bank of America, N.A. v. Terra Nova Ins. Co.*,
211 F.Supp.2d 493, 497 (S.D.N.Y. 2002) ........................................................... 12

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
184 F.R.D. 49, 55-56 (S.D.N.Y. 1999) .......................................................... 13, 14

*Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*,
215 F.R.D. 466, 471 (S.D.N.Y. 2003) ................................................................. 12

*In re Grand Jury Subpoenas*,
318 F.3d 379, 384 (2d Cir. 2002) ........................................................................... 5

*In re Initial Pub. Offering Sec. Litig.*,
249 F.R.D. 457, 466 (S.D.N.Y. 2008) ................................................................... 9

*In re Leslie Fay Cos. Sec. Litig.*,
152 F.R.D. 42, 46 (S.D.N.Y. 1993) ....................................................................... 9

*In re Natural Gas Commodities Litig.*,
232 F.R.D. 208, 210 (S.D.N.Y. 2005) ................................................................... 9

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
230 F.R.D. 433, 438 (D. Md. 2005) ..................................................................... 10

*In re Steinhardt Partners, L.P.*,
9 F.3d 230 (2d Cir. 1993) ....................................................................................... 6

*International Honeycomb Corp. v. Transtech Serv. Network, Inc.*,
No. 90 CV 3737 (CBA),
1992 U.S. Dist. LEXIS 15999, at *4 (E.D.N.Y. Oct. 16, 1992) .......................... 12

*Medinol, Ltd. v. Boston Sci. Corp.*,
214 F.R.D. 113, 116-117 (S.D.N.Y. 2002) .......................................................... 12

*Spanierman Gallery v. Merritt*,
No. 00 Civ. 5712 (LTS) (THK),
2003 U.S. Dist. LEXIS 22141, at *2 (S.D.N.Y. Dec. 9, 2003) ............................ 11

*United States v. Bergonzi*,
214 F.R.D. 563, 570 (N.D. Cal. 2003) ................................................................. 10

*United States v. Jacobs*,
117 F.3d 82, 91 (2d Cir. 1997) ............................................................................. 11

*United States v. Reyes*,
239 F.R.D. 591, 604 (N.D. Cal. 2006) ................................................................... 9

*United States v. Treacy*,
No. S2 08 CR 366 (JSR),
2009 U.S. Dist. LEXIS 66016, at *2-3, *4-8 (Mar. 24, 2009).......................... 6, 7

la-1114783

**STATUTES**

Fed. R. Civ. P. 26(b)(3)(A)(ii) ................................................................. 13

Fed. R. Civ. P. 26(b)(3)(B) ........................................................................ 6

Fed. R. Civ. P. 45(c)(3)(A)(iii) ................................................................. 5

la-1114783

## I.    INTRODUCTION

Nu Horizons Electronics Corporation ("Nu Horizons") bears the burden to establish both that the materials it seeks to withhold constitute protected work product, and that "no exception or waiver applies."  As discussed below, Nu Horizons has elected to stonewall requests for information designed to present the Court with a factual record sufficient to evaluate the propriety of granting the requested relief.  Instead, it presents an intentionally incomplete and obviously misleading discussion of the nature and extent of its prior disclosures of assertedly protected information, while refusing to respond to Defendants' requests for information — sent at the suggestion of Nu Horizons counsel.  Defendants request that the Court deny the motion and order compliance with the subpoenas forthwith.  Alternatively, they request that the Court direct Nu Horizons and its counsel to provide complete responses to the March 2, 2011 letter from defense counsel discussed below, and to schedule further proceedings as warranted.

## II.    THE AVAILABLE FACTUAL RECORD RELEVANT TO THIS MOTION

It is not disputed that Nu Horizons has disclosed the details of its internal investigation, including the final 78-page report that Gage Spencer & Fleming LLP ("Gage Spencer") prepared (the "Internal Investigation Report") to Plaintiff.  Further, Nu Horizons has refused to disclose to the Court and Defendants information concerning any other disclosures of its internal investigation.  Nu Horizons thus has failed to meet its burden to quash the subpoenas. Summarized below are the limited facts that are known to Defendants.

### A.    The SEC Subpoenas Nu Horizons

Nu Horizons received a Securities and Exchange Commission ("SEC") subpoena in April 2007.  According to Nu Horizons' SEC filings, the internal investigation commenced in April 2007, the same month that the SEC subpoena was received.  (Marmalefsky Decl., Ex. 1, (excerpts from Nu Horizons April 29, 2009 Form 10-K).)  Nu Horizons announced the

completion of the internal investigation in April 2009; however, as stated in the Form 10-K it filed at that time, the Company understood that "that the SEC investigation [was] ongoing and [might] result in additional inquiries" and stated that it could not "predict the outcome of such investigation." (*Id.*)

**B.     Nu Horizons Produces Summaries of Witness Interviews to the SEC**

As of June 19, 2008, Gage Spencer had interviewed Arthur Nadata, the then-Chief Executive Officer of Nu Horizons on May 1, 2008, June 10, 2008 and June 17, 2008, and provided the SEC with binders and exhibits concerning those interviews — all prior to and without entering into any purported non-waiver agreement with the SEC. (Marmalefsky Decl., Ex. 2.)

On July 29, 2008, the Audit Committee of the Nu Horizons Board of Directors entered into a purported non-waiver agreement with the SEC, which by its terms consisted ***exclusively*** of documents relating to and prior oral summaries of interviews with Paul Durando, another now-former Nu Horizons employee. (Horgan Aff., Ex. A.)  This is the only purported non-waiver agreement attached to the pending motion.

Nadata and Durando were not the only Nu Horizons employees whose interviews were orally summarized for the SEC by Gage Spencer.  As reflected in a March 19, 2009 letter agreement with the SEC that Nu Horizons failed to provide to the Court (Marmalefsky Decl., Ex. 3), Nu Horizons sought at that date to protect from disclosure other oral summaries of witness interviews that it had provided to the SEC.  That letter is silent as to the identity of the persons interviewed and the dates when the oral summaries were presented.

2

C.   **The Internal Investigation Is a Focus of Due Diligence by Potential Purchasers**

As Nu Horizons acknowledges, it was recently acquired by Arrow Electronics, Inc. ("Arrow") on January 3, 2011.  (Horgan Aff. ¶ 3 n.1.)  Indeed, Nu Horizons' October 29, 2010 proxy statement for the proposed merger with Arrow makes clear that the Vitesse-related SEC subpoena, private class action and internal investigation were at issue during Nu Horizons' prolonged efforts to sell the company.  (Marmalefsky Decl., Ex. 4.)  Initial efforts to sell the Company occurred in the Spring of 2008 (*id.*) — the same time that Gage Spencer was interviewing witnesses and sharing the details of those interviews with the SEC.  It cannot be reasonably doubted that Nu Horizons provided Arrow with details from the internal investigation, and likely the Internal Investigation Report itself, during Arrow's acquisition-related due diligence.  In addition to Arrow, it is likely that Nu Horizons disclosed details concerning the internal investigation, and likely the Internal Investigation Report itself, to other parties as part of Nu Horizons' efforts to find a buyer, including those identified in the proxy statement (e.g., Morgan Stanley, Houlihan Lokey, Goldman Sachs, and competing bidder "Strategic Party A").  (*Id.*)

D.   **The Internal Investigation Is Likely Discussed with Outside Auditors**

It is also likely that the Internal Investigation Report or the results of the internal investigation were shared with the outside auditors for Nu Horizons, Lazar Levine & Felix LLP ("Lazar Levine") and/or Ernst & Young LLP.  One conclusion of the internal investigation was that there were "internal control, inventory management and record keeping deficiencies" at Nu Horizons (Marmalefsky Decl., Ex. 1), topics that would be of concern to any auditor.  Given that Nu Horizons dismissed Lazar Levine and hired Ernst & Young during the internal investigation (Marmalefsky Decl., Ex. 5), it is likely that Nu Horizons shared the internal investigation's

la-1114783

tentative findings with Ernst & Young even before the latter agreed to serve as the company's outside auditor.

### E.    Nu Horizons Refuses to Provide the Court with a Complete and Accurate Factual Record

On February 24, 2011, Nu Horizons' attorneys, Robert Gage and Laura-Michelle Horgan of Gage Spencer, advised defense counsel that they would be moving to prevent the SEC from using or disclosing the Internal Investigation Report that Gage Spencer had prepared on behalf of the Nu Horizons Audit Committee.  (Marmalefsky Decl. ¶ 8.)  The following day, in advance of telephoning the Court to schedule this motion, and in light of the Second Circuit's case-by-case, fact-intensive waiver analysis discussed below, defense counsel spoke with Mr. Gage and Ms. Horgan regarding the need to provide the Court with a factual record adequate to address the issues presented by this motion.  Defense counsel proposed to conduct a brief, focused deposition of Mr. Gage, the Gage Spencer attorney who conducted the internal investigation and who oversaw preparation of the Internal Investigation Report.  (*Id.*)  Defense counsel advised that the purpose of the deposition would be to present in the most efficient manner a factual record addressing to what extent details had been disclosed to anyone other than Gage Spencer's client concerning the internal investigation, including any disclosures of witness statements and all dissemination of written reports.  In particular, defense counsel expressed the intention to inquire as to whether Gage Spencer or anyone else had shared the Internal Investigation Report or details of the internal investigation with third parties such as outside auditors or prospective purchasers of Nu Horizons.  (*Id.*)  Mr. Gage responded that he believed that a deposition was unnecessary and instead suggested that the factual record be developed through an exchange of letters.  (*Id.*)  While expressing reservations about the efficiency of such a process and reserving

the right to ask the Court to permit a deposition, defense counsel agreed to initiate the process of developing the factual record through written communications. (*Id.*)

Defense counsel sent the requested letter to Gage Spencer on March 2, 2011. (Marmalefsky Decl., Ex. 6.) The letter's requests were narrowly tailored to solicit information and documents directly relevant to the issue of waiver of any work product protection for the Internal Investigation Report; for example, the letter requested the identities of third parties to whom the Internal Investigation Report or the results of the internal investigation were produced, the dates of such productions, and copies of any confidentiality or non-waiver agreement pursuant to which the productions were made. (*Id.*) Gage Spencer, in its March 4, 2011 response letter, denied having ever invited Defendants' attorneys to send a list of requests and categorically refused to respond to any of the requests, claiming that "defendants' requests are extraordinarily overbroad and seek privileged information." (Marmalefsky Decl., Ex. 7.)

III.   **NU HORIZONS FAILS TO SHOW THAT THE INTERNAL INVESTIGATION REPORT IS PROTECTED FROM DISCLOSURE BY THE WORK PRODUCT DOCTRINE**

Nu Horizons claims that the Court, pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iii), must quash the subpoenas because the Internal Investigation Report is "classic work product material" and "no waiver of privilege occurred when Nu Horizons produced [it] to the SEC pursuant to the terms of an express Non-Waiver Agreement." (Mem. in Supp. of Mot. ("Mem.") at 3-7.) As the moving party, Nu Horizons bears the burden of showing both that the subpoenas "require[] disclosure of privileged materials" and that "no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii); *see also In re Grand Jury Subpoenas*, 318 F.3d 379, 384 (2d Cir. 2002) ("[T]he party invoking a privilege bears the burden of establishing its applicability to the case at hand."). Nu Horizons falls far short of satisfying this burden. Indeed, as summarized above, Nu Horizons has refused to provide any information concerning the extent

of prior disclosures of the Internal Investigation Report and related materials.  Nor can it show

that Defendants' "substantial need" for the Internal Investigation Report is not an exception to

the work product doctrine, pursuant to Federal Rule of Civil Procedure 26(b)(3)(b).  Given the

refusal of Nu Horizons to provide a record adequate to meet its burden to show that "no

exception or waiver applies," the Court should direct Nu Horizons to comply with the subpoenas

and produce the Internal Investigation Report and related materials forthwith.[1]

> A.   **Nu Horizons Fails to Establish that It Did Not Waive Work Product Protection by Providing the Internal Investigation Report or the Results of the Internal Investigation to the SEC**

While Nu Horizons admits that its Audit Committee produced the Internal Investigation

Report to the SEC, it argues that this production did not waive work product protection because

it was made "pursuant to a non-waiver agreement."  (Mem. at 4.)  In the Second Circuit,

"whether a party waived privilege by disclosing confidential materials to the government must

be analyzed on a 'case-by-case' basis."  (*Id.* at 5 (citing and quoting *In re Steinhardt Partners,*

*L.P.*, 9 F.3d 230 (2d Cir. 1993)).)  But Nu Horizons fails to offer any case-specific analysis

whatsoever.  Indeed, despite its burden, Nu Horizons intentionally avoids presenting a complete

and accurate factual record on the issue.

The reasoning underpinning this Court's order in *United States v. Treacy*, No. S2 08 CR

366 (JSR), 2009 U.S. Dist. LEXIS 66016 (Mar. 24, 2009), strongly supports a finding of waiver

---

[1] Nu Horizons invites the Court to conduct an in camera review of the Internal Investigation Report to determine "issues of privilege."  (Mem. at 9.)  Defendants respectfully submit that — given Nu Horizons' provision of the entire report to Plaintiff and its refusal to provide a factual record sufficient to establish that any work product protection was not waived — no such review is necessary.  If, however, the Court finds that the Internal Investigation Report may be entitled to any work product protection, Defendants ask that the Court protect from disclosure only those portions of the Internal Investigation Report and related materials that actually contain attorneys' undisclosed "mental impressions, conclusions, opinions, or legal theories."  Fed. R. Civ. P. 26(b)(3)(B).

here.  In *Treacy*, outside counsel, during the course of conducting an internal investigation, interviewed company employees and prepared interview memoranda.  *Id.* at *2-3.  In a related criminal prosecution by the United States Attorney's Office ("USAO"), the defendant served on outside counsel a subpoena seeking certain interview memoranda.  *Id.*  Outside counsel moved the Court to quash the subpoena.  In opposing the motion, the defendant argued that any claim of privilege as to the interview memoranda sought was waived by providing plaintiff USAO with other interview memoranda and oral summaries of certain interviews.  *Id.* at *3.  Although granting the motion, the order made clear that the Court — as it had done previously in the case — would have denied the motion and ordered disclosure had plaintiff USAO been provided with the interview memoranda or oral summaries of the interviews:  "[A]ll of the interview memoranda that were disclosed to the Government have now been provided to defendant.  Accordingly, the instant case does not present any of the 'unusual circumstances' that otherwise would require a finding of waiver."  *Id.* at *4-8.  Given that Nu Horizons has provided Plaintiff SEC with the Internal Investigation Report, *Treacy*'s reasoning weighs heavily for a finding of waiver here.

   1. **Nu Horizons fails to establish that its communications with and productions to the SEC were all covered by a then-operative non-waiver agreement**

   Despite the February 25 telephone call and the March 2 letter that followed, each of which placed in issue the extent to which the Internal Investigation Report and related matters had been disclosed, Nu Horizons made no effort to provide the Court or the parties with a complete factual record.  Indeed, aside from selectively quoting a July 29, 2008 letter agreement that has nothing to do with the Internal Investigation Report, and incorrectly claiming that the Internal Investigation Report was produced to the SEC pursuant to that letter agreement (Mem. at 4-7; Horgan Aff. ¶ 8), Nu Horizons failed to provide the Court with details about its

communications with and productions to the SEC in connection with the internal investigation, and completely avoids the subject of disclosures to other persons or entities. For example, Nu Horizons fails to advise the Court when it first started providing the SEC with information and updates regarding the internal investigation, what types of information were provided, and whether the information was provided pursuant to confidentiality or non-waiver agreements. As the June 19, 2008 letter attached as Exhibit 2 to the Marmalefsky Declaration demonstrates, Gage Spencer provided details concerning interviews that it conducted without entering into any purported non-waiver agreement. And the March 19, 2009 letter (Exhibit 3 to the Marmalefsky Declaration) makes clear that it again provided oral summaries of witness interviews prior to any purported non-waiver agreement regarding those interviews.

Nu Horizons' selective quotations from the July 29, 2008 letter agreement and its argument that the agreement covers all information shared with the SEC, including the Internal Investigation Report, are both misleading and obviously inaccurate. The July 29 letter agreement make abundantly clear that it concerns a narrow set of documents: "The Confidential Materials covered by this letter agreement consist *exclusively* of the 'compilation' of documents bates numbered: NUHD00001 to NUHD00252, and an oral summary of the internal investigation's prior interviews of Paul Durando." (Horgan Aff., Ex. A. (emphasis added).)

When Nu Horizons first stated its intent to block the SEC from using or disclosing the Internal Investigation Report, the SEC provided Defendants' attorneys with a copy of a different letter agreement, dated March 19, 2009. (Marmalefsky Decl., Ex. 3.) That document does refer to the Internal Investigation Report, as well as oral summaries of interviews conducted during the internal investigation. Thus, there is no question that the exhibit attached to the Horgan

Affirmation in support of the Motion to Quash does not concern or protect from disclosure the Internal Investigation Report.

> **2.** **Even if the putative non-waiver agreement covered the Internal Investigation Report, it does not in and of itself establish that there was no waiver**

Even notwithstanding the fatal deficiencies identified above, neither the putative non-waiver agreement relied upon by Nu Horizons nor the letter provided to Defendants by the SEC is sufficient to meet Nu Horizons' burden to establish that there has not been any waiver of work product protection.  There is no "'per se' rule that if there is a confidentiality/non-waiver agreement with the government, the privilege is not waived." *In re Natural Gas Commodities Litig.*, 232 F.R.D. 208, 210 (S.D.N.Y. 2005).  "[S]elective waiver should not be found simply because of the existence of a confidentiality agreement." *In re Initial Pub. Offering Sec. Litig.*, 249 F.R.D. 457, 466 (S.D.N.Y. 2008).  "Voluntary disclosure of attorney work product, regardless of the existence of a confidentiality agreement, will waive work product privilege absent special circumstances." *Id.  See also In re Leslie Fay Cos. Sec. Litig.*, 152 F.R.D. 42, 46 (S.D.N.Y. 1993).  Nu Horizons does not dispute that its many disclosures to the SEC were voluntary or provide any factual basis to find "special circumstances" sufficient to establish the absence of a waiver.

Moreover, each purported non-waiver agreement, by its express terms, permits the SEC to disclose any information it receives, within its sole discretion.  The agreement provides that the SEC may disclose covered information "to the extent that the Staff determines that disclosure is otherwise required by law or would be in furtherance of the Commission's discharge of its duties and responsibilities." (Mem. at 3.)  Other courts have found that productions pursuant to identically worded letters do not preserve work product protection. *See, e.g.*, *United States v. Reyes*, 239 F.R.D. 591, 604 (N.D. Cal. 2006) (finding waiver where confidentiality agreements

la-1114783

act as "little more than fig leafs" that "essentially leave the agencies to manage the disclosed information as they see fit"); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 230 F.R.D. 433, 438 (D. Md. 2005) (finding waiver where confidentiality agreement with the SEC allowed "substantial discretion to the SEC"); *United States v. Bergonzi*, 214 F.R.D. 563, 570 (N.D. Cal. 2003) (finding waiver where the confidentiality agreement "authorized the SEC to, in its discretion, determine that disclosure is otherwise required by federal law or in furtherance of [either entities'] discharge of its duties and responsibilities") (alteration in original; internal quotations omitted).  In light of the great discretion that it affords to the SEC, the putative non-waiver agreement does not preserve work product protection, nor can Nu Horizons forbid the SEC from producing the Internal Investigation Report to Defendants.[2]

Given the incomplete and inaccurate factual record about Nu Horizons' communications with and productions to the SEC, Nu Horizons' misleading arguments and the great discretion afforded to the SEC under the putative non-waiver agreement itself, Nu Horizons has failed to carry its burden of showing that work product protection was not waived by sharing the Internal Investigation Report with the SEC.

**B.** **Nu Horizons Fails to Establish that It Did Not Waive Work Product Protection by Likely Providing the Internal Investigation Report or the Results of the Internal Investigation to Other Third Parties**

Nu Horizons' focal argument is that the company's disclosures to the SEC did not waive work product protection.  But Nu Horizons' moving papers are utterly silent regarding whether there were additional disclosures of the Internal Investigation Report, or the extent to which any

---

[2] That the SEC has the discretion to provide Defendants with the Internal Investigation Report and the results of the internal investigation is evidenced by the fact that, "without prior authorization from Nu Horizons, the SEC produced to Defendants the compilation of documents annexed to Nu Horizons' Internal Report as Exhibits 1 to 207."  (Horgan Aff. ¶ 11.)

other details (such as interview statements) of the internal investigation were shared with third

parties.  (*See generally* Mem. and Horgan Aff.)  Again, as the moving party, Nu Horizons bears

the burden of showing that there was no waiver.  Despite Defendants' requests, Nu Horizons

refused to provide the Court with any facts regarding other disclosures of the Internal

Investigation Report or any disclosures to third parties of any other information obtained during

the internal investigation.  It cannot be disputed that voluntary disclosure to third parties waives

any claim of privilege, including work product protection.  *See, e.g.*, *United States v. Jacobs*, 117

F.3d 82, 91 (2d Cir. 1997); *Spanierman Gallery v. Merritt*, No. 00 Civ. 5712 (LTS) (THK), 2003

U.S. Dist. LEXIS 22141, at *2 (S.D.N.Y. Dec. 9, 2003).   Nu Horizons does not deny that such

disclosures occurred; instead, rather than respond to questions regarding such disclosures, it has

chosen instead to stonewall.

Nu Horizons almost certainly provided information and documents that it now claims are

protected work product to others.  For example, given the parallel criminal investigation and now

prosecution, it is almost certain that the United States Attorney's Office has received copies of

materials provided to the SEC.  Similarly, it cannot be reasonably doubted that Nu Horizons

provided Arrow with details from the internal investigation, and likely the Internal Investigation

Report itself, during Arrow's acquisition-related due diligence.  Indeed, Nu Horizons'

October 29, 2010 proxy statement for the proposed merger with Arrow makes clear that the

Vitesse-related SEC subpoena, private class action and internal investigation were at issue during

Nu Horizons' prolonged efforts to sell the company.  (Marmalefsky Decl., Ex. 4.)  In addition to

Arrow, it is likely that Nu Horizons disclosed details concerning the internal investigation, and

likely the Internal Investigation Report itself, to other parties as part of Nu Horizons' efforts to

find a buyer, including those identified in the proxy statement.  (*Id.*)  Disclosure to third-party

investors waives any claim of privilege. *See, e.g.*, *International Honeycomb Corp. v. Transtech Serv. Network, Inc.*, No. 90 CV 3737 (CBA), 1992 U.S. Dist. LEXIS 15999, at *4 (E.D.N.Y. Oct. 16, 1992).[3]

Nu Horizons' moving papers are similarly silent regarding whether the Internal Investigation Report or the results of the internal investigation were shared with its outside auditors Lazar Levine & Felix LLP ("Lazar Levine") or Ernst & Young LLP.  Given that Nu Horizons dismissed Lazar Levine and hired Ernst & Young during the internal investigation (Marmalefsky Decl., Ex. 5), it is likely that Nu Horizons shared the internal investigation's tentative findings with Ernst & Young even before the latter agreed to serve as the company's outside auditor.  Courts in this district have held that disclosure to companies' outside auditors waives any claim of privilege because outside auditors do not share "common interests" in litigation with the companies.  *See, e.g.*, *Medinol, Ltd. v. Boston Sci. Corp.*, 214 F.R.D. 113, 116-117 (S.D.N.Y. 2002) (finding, in the context of an internal investigation, that "[w]hile Boston Scientific held meetings of its Special Litigation Committee with an eye to litigation, the disclosures to the independent auditor had no such purpose").

From the text of the March 19, 2009 letter agreement with the SEC, it also seems likely that Gage Spencer shared the results of its oral interviews over a lengthy period of time well

---

[3] That Nu Horizons and Arrow (or any other potential purchaser) potentially shared a common commercial interest does nothing to preserve work product protection.  The "common interest" doctrine allows third parties to share privileged information when they have common legal interests, and not common commercial interests.  *See, e.g.*, *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 471 (S.D.N.Y. 2003); *Bank of America, N.A. v. Terra Nova Ins. Co.*, 211 F.Supp.2d 493, 497 (S.D.N.Y. 2002); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995) (holding that the common interest doctrine does not "encompass a joint business strategy which happens to include as one of its elements a concern about litigation").

before the March 19 letter was prepared and executed, thus underscoring the absence of any

reasonable expectation of confidentiality.

Given the moving papers' complete silence regarding the extent of and details concerning

disclosure of the Internal Investigation Report and other details from the internal investigation to

third parties, Nu Horizons has failed to carry its burden of showing that work product protection

was not waived.

## IV.   DEFENDANTS HAVE "SUBSTANTIAL NEED" FOR THE INTERNAL INVESTIGATION REPORT

As shown above, Nu Horizons has failed to carry its burden of showing that the Internal

Investigation Report's work product protection remains intact.  But even setting aside this fatal

deficiency, Nu Horizons' motion to quash should be denied for the independent reason that

Defendants have "substantial need" for the Internal Investigation Report and related materials.

The work product protection afforded by Rule 26(b)(3) is not absolute:  work product is

discoverable if a party "has substantial need for materials to prepare its case and cannot, without

undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ.

P. 26(b)(3)(A)(ii).  Defendants here not only have "substantial need" for the Internal

Investigation Report and related materials, they cannot obtain the materials' "substantial

equivalent" even with "undue hardship."

Defendants have a substantial need for the Internal Investigation Report and related

materials because the materials are essential to their defense.  *See, e.g.*, *Granite Partners, L.P. v.

Bear, Stearns & Co.*, 184 F.R.D. 49, 55-56 (S.D.N.Y. 1999).  The SEC's revenue recognition

claims in this matter revolve around the accounting for alleged side agreements between Vitesse

and Nu Horizons employees that gave Nu Horizons an "unfettered right" to return all Vitesse

product purchased at quarter-ends.  (Compl. ¶¶ 32-33, 38-40, 53.)  The SEC's Rule 26 report

also lists at least nine current or former Nu Horizons employees that the SEC intends to call as witnesses.  (Marmalefsky Decl., Ex. 8.)  Indeed, in opposing the motion for transfer of venue at the hearing in this matter just two weeks ago, the SEC asserted repeatedly that testimony from current and former Nu Horizons employees is critical to its case.

Without the Internal Investigation Report and related materials, Defendants' ability to discover the existence of, and to impeach witnesses at trial with, inconsistent statements is severely compromised.  Nu Horizons argues that there is no substantial need here because "Defendants have [] obtained transcripts of deposition testimony taken by the SEC Staff from Nu Horizons' witnesses" and "are also in the process of conducting their own depositions of Nu Horizons' witnesses."  (Mem. at 8.)  But depositions conducted years later "cannot reveal the same detail" as interviews conducted "when the witnesses' memories were fresh."  *Granite Partners*, 184 F.R.D. at 56.  Such need is particularly pronounced here given that the SEC possesses and may use at trial the Internal Investigation Report and the related materials (including interview notes), and can elect not to call witnesses that may be supportive of the defense and whose prior statements have been withheld from Defendants.  *See id.* at 55.  Accordingly, Nu Horizons' motion to quash should be denied for the independent reason that Defendants have substantial need for the Internal Investigation Report and related materials, and cannot obtain their equivalent without undue hardship.[4]

---

[4] As the Court is aware, the misconduct alleged here is the subject of a parallel criminal prosecution pending in the Southern District of New York.  Given that the Internal Investigation Report has likely also been provided to the United States Attorney's Office, Nu Horizons' position that Defendants should be precluded from obtaining the Internal Investigation Report because it believes it can pick and choose to whom disclosures are made implicates substantial due process and Sixth Amendment concerns.

V.      **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Nu Horizons' Motion to Quash Subpoenas.  In the alternative, Defendants request that the Court direct Nu Horizons and its counsel to provide complete responses to the March 2, 2011 letter from defense counsel, and to schedule further proceedings as warranted.

Dated: Los Angeles, CA           MORRISON & FOERSTER LLP
       March 9, 2011

                                 Dan Marmalefsky
                                 555 West Fifth Street
                                 Los Angeles, California  90013-1024
                                 213.892.5200

                                 Lawrence Gerschwer
                                 Katie L. Viggiani
                                 1290 Avenue of the Americas
                                 New York, New York 10104-0050
                                 212.468.8000

                                 By:     */s/ Dan Marmalefsky*
                                         Dan Marmalefsky
                                         *Attorneys for Defendant*
                                         *Louis Tomasetta*

Dated: Los Angeles, CA           BIRD, MARELLA, BOXER, WOLPERT,
       March 9, 2011               NESSIM, DROOKS & LINCENBERG, P.C.

                                 Gary S. Lincenberg
                                 Peter J. Shakow
                                 1875 Century Park East, 23rd Floor
                                 Los Angeles, California  90067
                                 310-201-2100

                                 CLAYMAN & ROSENBERG
                                 Charles Clayman
                                 305 Madison Avenue
                                 New York, New York  10165
                                 212-922-1080

                                 By:     */s/ Peter Shakow*
                                         Peter Shakow
                                         *Attorneys for Defendant*
                                         *Eugene Hovanec*

15

la-1114783