```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
SECURITIES AND EXCHANGE COMMISSION,      :
                                         :
               Plaintiff,                :   10 Civ. 9239 (JSR)
                                         :
          -v-                            :   OPINION AND ORDER
                                         :
VITESSE SEMICONDUCTOR CORPORATION,       :
LOUIS R. TOMASETTA, EUGENE F.            :
HOVANEC, YATIN D. MODY, NICOLE R.        :
KAPLAN,                                  :
                                         :
               Defendants.               :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

Pending before the Court is the joint proposal of plaintiff Securities and Exchange Commission ("S.E.C.") and three of the five defendants – Vitesse Semiconductor Corporation ("Vitesse"), Yatin D. Mody, and Nicole R. Kaplan – to approve Consent Judgments that would resolve the case as to these defendants. The proposal raises difficult questions of whether the S.E.C.'s practice of accepting settlements in which the defendants neither admit nor deny the S.E.C.'s allegations meets the standards necessary for approval by a district court.

The Complaint in this case, filed December 10, 2010, alleges that for more than a decade, Vitesse engaged in fraudulent revenue recognition practices and stock options backdatings that were concealed from its shareholders and the public by innumerable material misstatements in Vitesse's filings with the S.E.C. Compl. ¶ 1. These fraudulent practices were allegedly orchestrated by the four

individual defendants: co-founder and CEO, Louis Tomasetta; Chief Financial Officer ("CFO") and Executive Vice President, Eugene Hovanec; Controller and CFO, Yatin Mody; and Manager/Director of Finance, Nicole Kaplan.  Id. ¶ 2.  Among other things, the Complaint alleges that between September 2001 and April 2006, Tomasetta, Hovanec, Mody, and Kaplan materially inflated Vitesse's reported earnings by immediately recording as revenues the shipments made to Vitesse's largest distributor, Nu Horizons Electronics Corporation, even though the distributor had an unconditional right to return the product.  Id. ¶ 2.  The Complaint further alleges that from 1995 to 2006, Vitesse, through Tomasetta and Hovanec, fraudulently backdated or repriced forty stock option grants without proper accounting, so that the company failed to record approximately $184 million in compensation expenses.  Id. ¶¶ 5-6.

Simultaneous with filing the Complaint on December 10, 2010, the S.E.C. – confident that the courts in this judicial district were no more than rubber stamps – filed proposed Consent Judgments against Vitesse, Mody, and Kaplan without so much as a word of explanation as to why the Court should approve these Consent Judgments or how the Consent Judgments met the legal standards the Court is required to apply before granting such approval.  Called to account, the S.E.C. provided the Court with a letter brief dated December 21, 2010 ("SEC

Br.") seeking to justify the proposed settlements.[1]  The Court then convened a hearing on December 22, 2010, at which the parties orally answered some of the Court's questions and agreed to provide further written submissions regarding the Court's stated concerns.[2]  Although these submissions did not fully answer all of the Court's questions, the Court, upon reflection, finds that the materials now before it are sufficient to enable the Court to rule on whether or not to approve the proposed Consent Judgments.

The S.E.C.'s letter brief of December 21, 2010 correctly states the standard that the Court must apply in determining whether to approve the proposed Consent Judgments:

> The standard for judicial review and approval of proposed consent judgments in [Securities and Exchange] Commission enforcement actions is well-established. Because actions brought by the Commission seek to enforce the federal securities laws, they should serve "the public interest." SEC v. Randolph, 736 F.2d 525, 529 (9th Cir. 1984), see also United States v. Trucking Emp., Inc., 561 F.2d 313, 317 (D.C. Cir. 1977)("prior to approving a consent decree a court must satisfy itself of the settlement's overall fairness to beneficiaries and consistency with the public interest") (citations and internal quotations omitted).  To ensure that the public interest is served, the court "need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy, but need only determine that the settlement is fair, adequate, reasonable

---

[1] This, and the other letter briefs submitted by the parties, will now be docketed with the Clerk of the Court.

[2] Indicative of the parties' view that the Court's approval was pro forma, the attorneys for settling defendants Mody and Kaplan initially asked to be excused from attending this conference, an application that was denied.  See Transcript of Hearing on December 22, 2010 ("tr. 12/12/10") at 3.

and appropriate under the particular facts and that there has been a valid consent by the parties." <u>Citizens for a Better Env't v. Gorsuch</u>, 718 F.2d 1117, 1126 (D.C. Cir. 1983) (citations omitted). Stated another way, "[t]his Court has the obligation, within carefully prescribed limits, to determine whether the proposed Consent Judgment settling [a] case is fair, reasonable, adequate, and in the public interest." <u>SEC v. Bank of America Corp.</u>, No. 09-CV-6829 (JSR), 2009 WL 2842940 at *1 (S.D.N.Y. Aug. 25, 2009). In making this assessment, "the law requires the Court to give substantial deference to the SEC as the regulatory body having primary responsibility for policing the securities markets, especially with respect to matters of transparency." <u>SEC v. Bank of America Corp.</u>, Nos. 09 Civ. 6829 (JSR), 10 Civ. 0215 (JSR), 2010 WL 5624581, at *6 (S.D.N.Y. Feb. 22, 2010).

SEC Br. at 3-4.

Here, the proposed consent judgment against Vitesse would require Vitesse to pay a $3 million penalty, and would permanently enjoin Vitesse from violating Section 17(a) of the Securities Act of 1933 ("Securities Act"), Sections 10(b), 13(a), 13(b)(2)(A), 13(b)(2)(B), and 14(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and SEC Rules 10b-5, 12b-20, 13a-1, 13a-13, and 14a-9 promulgated under the Exchange Act ("Exchange Act Rules").[3] The proposed judgment against Mody would require him to pay $162,320 in disgorgement and prejudgment interest, plus a monetary civil penalty to be subsequently determined;[4] would permanently bar him from serving

---

[3] The $3 million would be deposited into an interest bearing account with the Court Registry Investment System, and the S.E.C. indicates it might make a motion to distribute the $3 million to shareholders pursuant to the Fair Fund provisions of § 308(a) of the Sarbanes-Oxley Act of 2002.

[4] At the hearing on December 22, the parties further agreed that, in the case of both Mody and Kaplan, any such civil penalty

4

as an officer or director of any publicly traded company; and would permanently enjoin him from violating, or aiding and abetting in violations of, Section 17(a) of the Securities Act, Sections 10(b), 13(a), 13(b)(2)(A), 13(b)(2)(B), and 13(b)(5) of the Exchange Act, and Exchange Act Rules 10b-5, 12b-20, 13a-1, 13a-13, 13a-14, 13b2-1, and 13b2-2.  The proposed judgment against Kaplan would require her to pay $47,495 in disgorgement and prejudgment interest, plus a monetary civil penalty to be subsequently determined; and would permanently enjoin her from violating, or aiding and abetting in violations of, Section 17(a) of the Securities Act, Sections 10(b), 13(a), 13(b)(2)(A), 13(b)(2)(B), and 13(b)(5) of the Exchange Act, and Exchange Act Rules 10b-5, 12b-20, 13a-1, 13a-13, 13b2-1, and 13b2-2.

Given the Complaint's allegations of material misconduct by the defendants lasting over a decade, the financial terms of the proposed settlements with Mody and Kaplan – modest for now and uncertain for later –  may at first appear inadequate.  But, as the S.E.C. explains in its letter brief, these terms are very much colored by the fact that Mody and Kaplan have pleaded guilty to parallel criminal charges and are now cooperating with the Government in its criminal case against lead defendants Tomasetta and Hovanec, as well as in the SEC's own civil action against these two.  See SEC Br. at 3,6.  Similarly, the financial terms of the proposed settlement with

---

would be imposed no later than December 31, 2012.  See tr. 12/22/10 at 9.

Vitesse make more sense once one understands the current financial condition of this troubled company and how little money it now is in a position to pay.  See id. at 5.  One must also take account of the company's previous contributions made in connection with a parallel class action in the U.S. District Court for the Central District of California, in which Vitesse and others have contributed to a class action settlement fund of more than $10 million.  See id. at 2.  Against this background, and giving the required deference to the S.E.C.'s determinations, the Court finds the financial and injunctive terms of the settlements to be fair, reasonable, adequate, and in the public interest.

But there is a further aspect of the proposed Consent Judgments that is more troubling, to wit, the requested Court approval of settlements in which the defendants resolve the serious allegations of fraud brought against them "without admitting or denying the allegations of the Complaint."  To be sure, this is nothing new.  As the S.E.C. states in a footnote to its letter brief:

> The Commission did not require Vitesse, Mody, or Kaplan to admit liability in conjunction with the settlements because the Commission has a longstanding policy of settling cases on the basis of neither requiring an admission nor permitting a denial by the defendant.  Since 1972, Commission settlement documents have routinely included language that provides that the defendant neither admits nor denies the allegations of the Commission's complaint.  See Consent Decrees in Judicial or Administrative Proceedings, Securities Act Rel. No. 33-5337 (Nov. 28, 1972).  The policy is codified in the Commission's Rules of Practice. See 17 C.F.R. § 202.5(e).

SEC Br. at 2 n.1.

Actually, the history of the practice is a bit more complicated than the S.E.C.'s footnote suggests. <u>See</u> tr. 12/22/10 at 9 <u>ff</u>. Long before 1972, the S.E.C. had already begun entering into consent decrees in which the defendants neither admitted nor denied the allegations. This was strongly desired by the defendants because it meant that their agreement to the S.E.C.'s settlements would not have collateral estoppel consequences for parallel private civil actions, in which the defendants frequently faced potential monetary judgments far greater than anything the S.E.C. was likely to impose. But there were benefits for the S.E.C. as well. First, the practice made it much easier for the S.E.C. to obtain settlements. And second, at a time (prior to 1972) when the S.E.C.'s enforcement powers were largely limited to obtaining injunctive relief, the S.E.C.'s focus was somewhat more centered on helping to curb future misconduct by obtaining access to the Court's contempt powers than on obtaining admissions to prior misconduct.[5]

---

[5] Once the Court has enjoined a defendant from future violations of the securities laws, the S.E.C., if it has evidence of a subsequent violation, can move summarily to have the Court hold the defendant in contempt, following an expedited hearing, rather than having to go through the laborious process of filing a civil complaint, undergoing full discovery and motion practice, and trying the case to a jury. More than anything else, it is this invocation of the Court's contempt power that mandates that courts carefully assess proposed S.E.C. consent judgments before giving such judgments judicial approval.

But, by 1972, it had become obvious that as soon as courts had signed off on such settlements, the defendants would start public campaigns denying that they had ever done what the S.E.C. had accused them of doing and claiming, instead, that they had simply entered into the settlements to avoid protracted litigation with a powerful administrative agency. Thus, the real change effected by the S.E.C. in 1972 was the requirement that a defendant who agreed to a consent judgment "without admitting or denying the allegations of the Complaint" nevertheless agree that the defendant would not thereafter publicly deny the allegations. To this end, each of the proposed Consent Judgments now presented to this Court is accompanied by a formal written "Consent" of the defendant agreeing, pursuant to 17 C.F.R § 205.5, "not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis."

The result is a stew of confusion and hypocrisy unworthy of such a proud agency as the S.E.C. The defendant is free to proclaim that he has never remotely admitted the terrible wrongs alleged by the S.E.C.; but, by gosh, he had better be careful not to deny them either (though, as one would expect, his supporters feel no such compunction). Only one thing is left certain: the public will never know whether the S.E.C.'s charges are true, at least not in a way that they can take as established by these proceedings.

This might be defensible if all that were involved was a private dispute between private parties.  But here an agency of the United States is saying, in effect, "Although we claim that these defendants have done terrible things, they refuse to admit it and we do not propose to prove it, but will simply resort to gagging their right to deny it."

The disservice to the public inherent in such a practice is palpable.  Confronted with the same choice, the United States Department of Justice has long since rejected allowing defendants, except in the very most unusual circumstances, to enter into pleas of nolo contendere, by which a defendant accepts a guilty plea to a criminal charge without admitting or denying the allegations.  See U.S. Dep't of Justice, U.S. Attorneys' Manual § 9-16.010 (2008) ("United States Attorneys may not consent to a plea of nolo contendere except in the most unusual circumstances and only after a recommendation for doing so has been approved by the Assistant Attorney General responsible for the subject matter or by the Associate Attorney General, Deputy Attorney General or the Attorney General."); U.S. Dep't of Justice, U.S. Attorneys' Manual § 9-27.500 (2006) ("The attorney for the government should oppose the acceptance of a plea of nolo contendere unless the Assistant Attorney General with supervisory responsibility over the subject matter concludes that the circumstances of the case are so unusual that acceptance of such a

9

plea would be in the public interest."). As the great U.S. Attorney General Herbert Brownell, Jr. stated in a 1953 departmental directive:

> [A] person permitted to plead <u>nolo contendere</u> admits his guilt for the purpose of imposing punishment for his acts and yet, for all other purposes, and as far as the public is concerned, persists in his denial of wrongdoing. It is no wonder that the public regards consent to such a plea by the Government as an admission that it has only a technical case at most and that the whole proceeding was just a fiasco.

<u>See</u> Comment, U.S. Dep't of Justice, U.S. Attorneys' Manual § 9-27.500 (2006).

Moreover, as a practical matter, it appears that defendants who enter into consent judgments where they formally state, with the S.E.C.'s full consent, that they neither admit nor deny the allegations of the complaint, thereafter have no difficulty getting the word out that they are still denying the allegations, notwithstanding their agreement not to "make any public statement" denying the allegations. Reacting to the equivocal press releases issued by some defendants after such settlements, S.E.C. Commissioner Luis A. Aguilar recently expressed the "hope that this revisionist history in press releases will be a relic of the past," but added "If not, it may be worth revisiting the Commission's practice of routinely accepting settlements from defendants who agree to sanctions 'without admitting or denying' the misconduct." <u>See</u> Commissioner Luis A. Aguilar, Speech by SEC Commissioner: Setting Forth Aspirations for 2011, Address to Practising Law Institute's SEC Speaks in 2011 (Feb. 4, 2011).

For now, however, the S.E.C.'s practice of permitting defendants to neither admit nor deny the charges against them remains pervasive, presumably for no better reason than that it makes the settling of cases easier. Although this Court must give substantial deference to the Commission's views, even if only embodied in a practice rather than in a fully articulated policy, the Court is ultimately obliged to determine whether such a practice renders any given proposed Consent Judgment so unreasonable or contrary to the public interest as to warrant its disapproval.

Ironically, however, the issue is of less significance in the case of the three Consent Judgments here proposed than in most cases, but for somewhat special reasons. Mody and Kaplan have already admitted their guilt in the parallel criminal proceedings; consequently, the public is not left to speculate about the truth of the essential charges here brought against them, for they have already admitted those charges in another public forum. As for Vitesse, its contribution of $2.4 million in stock to the class action settlement fund in California, coupled with its $3 million penalty payment if the instant Consent Judgment is approved, were agreed to in spite of the company's current financial difficulties, which has left it with a net operating cash flow for the year just ended of less than $1.5 million. See SEC Br. at 5. No reasonable observer of these events could doubt that the company has effectively admitted the allegations of the complaint in the way that, for a company, is particularly appropriate:

11

by letting its money do the talking. Under these unusual circumstances – but reserving for the future substantial questions of whether the Court can approve other settlements that involve the practice of "neither admitting nor denying" – the Court approves the proposed Consent Judgments.[6]

    SO ORDERED.

                                              _____
                                                     JED S. RAKOFF, U.S.D.J.

Dated:  New York, New York
        March 21, 2011

---

[6] The Consent Judgments, as now approved, will be docketed separately after the Court has signed them.