UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
SECURITIES AND EXCHANGE COMMISSION,   :
                                      :
              Plaintiff,              :     10 Civ. 9239 (JSR)
                                      :
              -v-                     :     MEMORANDUM
                                      :
VITESSE SEMICONDUCTOR CORPORATION,    :
LOUIS R. TOMASETTA, EUGENE F.         :
HOVANEC, YATIN D. MODY, NICOLE R.     :
KAPLAN,                               :
                                      :
              Defendants.             :
------------------------------------- x



JED S. RAKOFF, U.S.D.J.

On March 4, 2011, non-party Nu Horizons Electronic Corporation ("NuHo") moved to quash the subpoenas issued by defendants Tomasetta and Hovanec to the extent that they sought disclosure of an internal report prepared at the direction of NuHo's independent audit committee. After carefully considering the parties' written submissions, the Court by "bottom-line" Order denied NuHo's motion on March 15, 2011. In that Order, the Court also indicated that the ruling was without prejudice to NuHo's submitting to the Court a proposed protective order to limit disclosure of the internal report to parties other than the parties to this lawsuit. This Memorandum explains the reasons for the Court's March 15, 2011 Order.

By way of background, the SEC's complaint in this action alleges that during the period in or about 1995 through April 2006, defendant Vitesse Semiconductor Corporation ("Vitesse") engaged in fraudulent revenue recognition practices and stock options backdating

misconduct. Compl. ¶ 1. These fraudulent practices were allegedly orchestrated by the four individual defendants: co-founder and CEO, Louis Tomasetta; Chief Financial Officer ("CFO") and Executive Vice President, Eugene Hovanec; Controller and CFO, Yatin Mody; and Manager/Director of Finance, Nicole Kaplan. Id. ¶ 2. Among other things, the Complaint alleges that between September 2001 and April 2006, Tomasetta, Hovanec, Mody, and Kaplan materially inflated Vitesse's reported earnings by immediately recording as revenues the shipments made to Vitesse's largest distributor, NuHo, even though the distributor had an unconditional right to return the product. Id. ¶ 2. The right of return was allegedly accomplished through undisclosed side letters and oral agreements. The effect of this fraud was to materially inflate Vitesse's revenue in its financial statements.

On September 29, 2006, before the instant complaint was filed, the SEC notified NuHo that it was conducting a confidential investigation entitled In the Matter of Vitesse Semiconductor Corp. On April 13, 2007, the SEC issued subpoenas to NuHo for documents relating to Vitesse. Thereafter, the "Audit Committee" hired Gage Spencer & Fleming LLP ("GSF") to conduct an internal investigation into NuHo's relationship with Vitesse. In conducting this investigation, GSF retained forensic accountants, FTI Consulting ("FTI") which reported their findings to GSF pursuant to a "Kovel" privilege. See United States v. Kovel, 296 F.2d 918, 922 (2d Cir.

2

1981) (extending the attorney-client privilege to communications between a client and an accountant hired to assist the attorney in providing legal advice to the client).

On February 12, 2009, GSF concluded its internal investigation and issued a report to the Audit Committee (the "Internal Report"), which included: (i) a seventy-eight page written summary of GSF and FTI's conclusions; (ii) a Power Point Presentation prepared by GSF summarizing GSF and FTI's conclusions; and (iii) six tables prepared by FTI summarizing its conclusions. On March 19, 2009, NuHo produced the Internal Report to SEC staff pursuant to a non-waiver agreement (the "Non-Waiver Agreement"). This agreement states, in relevant part, that:

> ...by agreeing to the production of Confidential materials pursuant to this agreement, the Audit Committee does not intend to waive the protection of the attorney work product doctrine, attorney-client privilege, or any other applicable privilege as to third parties. The Audit Committee believes that the Confidential Materials are protected by at minimum, the attorney work product doctrine and the attorney-client privilege. The Audit Committee believes that the Confidential Materials warrant protection from disclosure. The Staff will maintain the confidentiality of the Confidential Materials pursuant to this agreement and will not disclose them to any third party, <u>except to the extent that the Staff determines that disclosure is otherwise required by law or would be in furtherance of the Commission's discharge of its duties and responsibilities</u>.

See Plaintiff's Response to Nu Horizons Electronic Corporations' Motion to Quash Subpoenas, Ex. 1 (emphasis supplied).

On January 27, 2011, defendants Tomasetta and Hovanec issued subpoenas to GSF and FTI seeking "[a]ll documents that you reviewed, prepared, used, sent or received in connection with or concerning the

3

Internal Investigation." Defendants issued a subpoena to NuHo with the same request on February 1, 2011.

On March 4, 2011, non-party NuHo moved to quash these subpoenas, arguing that the Internal Report was "classic work product material" that was protected from disclosure. While NuHo did disclose the Internal Report to the SEC, it did so pursuant to the Non-Waiver Agreement and thus, according to NuHo, it did not waive the privilege. Defendants Tomasetta and Hovanec opposed NuHo's motion, arguing that NuHo had not met its burden of showing that the Internal Report constituted privileged work product and that in any event NuHo waived work product protection by disclosing the Internal Report to the SEC as well as other parties.[1] Tomasetta and Hovanec also argued that disclosure was required because of the defendants' substantial need for the Internal Report and the related materials. The dispositive argument, however, was made by the SEC, which, noting that the Non-Waiver Agreement plainly permitted the SEC to disclose the report "to the extent [the SEC] determine[s] disclosure [is] required or [is] in furtherance of the Commission's discharge of its duties," represented that, on these bases, it had concluded that the report

---

[1] Defendants Tomasetta and Hovanec also suggested that NuHo may have waived the work product privilege by producing the Internal Report to parties other than the SEC, including the U.S. Attorney's Office, outside auditors, and the entity that acquired NuHo on January 3, 2011, Arrow Electronics, Inc. Because the Court concludes that the SEC was permitted to disclose the materials pursuant the Non-Waiver Agreement, the Court need not reach the question of whether NuHo waived the work product privilege by producing the documents to other parties.

4

should now be turned over to the defendants, given that the Internal Report discusses NuHo's commercial dealings with Vitesse and describes the inventory shipments and returns that are the subject of the SEC's complaint, and because of the strong public interest in full disclosure of these issues.

It is well-established that materials containing "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative" that were "prepared in anticipation of litigation" are generally protected from disclosure to third parties. United States v. Adlman, 134 F.3d 1194, 1197 (2d Cir. 1998). However, the protections of the work product doctrine are not absolute. For example, if a party discloses work product materials to an adversary, the privilege is deemed waived. In re Steinhardt Partners, L.P., 9 F.3d 230, 235 (2d Cir. 1993). Whether a party has waived privilege by disclosing confidential materials to a governmental agency must be analyzed on a "case-by-case" basis in light of the Second Circuit's determination that "[e]stablishing a rigid rule would fail to anticipate situations in which the disclosing party and the government may share a common interest in developing legal theories and analyzing information, or situations in which the SEC and the disclosing party have entered into an explicit agreement that the SEC will maintain the confidentiality of disclosed materials." Id. at 236. While the Second Circuit has never explicitly held that a non-waiver agreement between the SEC and the disclosing party necessarily protects the

disclosed material from third parties, some courts in this District -- relying on the language in Steinhardt -- have suggested that waiver will not be found when documents are disclosed to the government pursuant to a confidentiality agreement. See Police and Fire Ret. Sys. of the City of Detroit v. Safenet, Inc., 2010 WL 935317 (S.D.N.Y. March 12, 2010); In re Natural Gas Commodities Litig., 232 F.R.D. 208 (S.D.N.Y. 2005).

This case is different from the cited cases, however, in several important respects. First, the SEC -- the very government agency that received the allegedly privileged materials -- is actually a party to the instant action and thus could use the disclosed materials in its case against the defendants. Indeed, many of the key allegations in the SEC's complaint against Tomasetta and Hovanec concern Vitesse's relationship with NuHo -- the very topic of the Internal Report. Thus, disclosure is required to "level the playing field." Second, the Non-Waiver Agreement specifically contemplates disclosure when the SEC believes disclosure is required by law or is in furtherance of the discharge of the SEC's duties, both of which conditions the SEC has opined are present here. Thus, disclosure here is fully appropriate pursuant to the plain language of the Non-Waiver Agreement entered into between NuHo and the SEC.

Independently, the Court also concludes that disclosure is required in this case because of the defendants' substantial need for the Internal Report. To demonstrate substantial need, a party must

demonstrate an inability to obtain equivalent evidence without undue hardship. Fed. R. Civ. P. 26(b)(3). NuHo argues that there is no substantial need because the SEC is producing to defendants all non-privileged electronic and hard copy documents obtained from NuHo. Defendants have also obtained transcripts of the deposition testimony taken by the SEC staff from NuHo's witnesses and will be conducting their own depositions of NuHo's witnesses. Notwithstanding the production of these materials, however, the Court concludes that the Internal Report is critical to Tomasetta and Hovanec's defense since many of the key allegations in the complaint concern the alleged side agreements between Vitesse and NuHo. While the defendants have obtained transcripts of deposition testimony taken by the SEC from NuHo's witnesses and the defendants are also conducting their own depositions of NuHo's witnesses, these depositions "cannot reveal the same detail" as interviews conducted "when the witnesses' memories were fresh." See Granite Partners v. Bear, Stearns & Co., Inc., 184 F.R.D. 49, 56 (S.D.N.Y. 1999). Without the Internal Report, defendants' ability to impeach witnesses at trial may be severely compromised, especially since the SEC may use the fruits of the report at trial against Tomasetta and Hovanec.

Accordingly, the Court finds that disclosure of the Internal Report to defendants Tomasetta and Hovanec is required by principles of equal discovery, by the plain language of the non-waiver agreement,

and by the defendants' substantial need for the report, each of which is sufficient grounds to warrant disclosure.

Accordingly, the Court affirms its March 15, 2011 Order denying NuHo's motion to quash the subpoenas.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       March 25, 2011