```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
SECURITIES AND EXCHANGE COMMISSION,   :
                                      :
                Plaintiff,            :        10 Civ. 9239 (JSR)
                                      :
        -v-                           :        MEMORANDUM
                                      :
VITESSE SEMICONDUCTOR CORPORATION,    :
LOUIS R. TOMASETTA, EUGENE F. HOVANEC,:
YATIN D. MODY, NICOLE R. KAPLAN,      :
                                      :
                Defendants.           :
------------------------------------- x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/14/11

JED S. RAKOFF, U.S.D.J.

On April 19, 2011, non-party Nu Horizons Electronic Corporation ("NuHo") moved to quash the subpoenas issued by defendants Tomasetta and Hovanec requesting the production of handwritten notes taken during NuHo's internal investigation. Defendants Tomasetta and Hovanec simultaneously filed a motion to compel the production of these notes. On April 29, 2011, the Court heard oral argument on these motions and subsequently conducted an in camera review of the notes in question. On May 13, 2011, the Court issued a "bottom-line" Order denying NuHo's motion to quash and granting defendants' motion to compel. This Memorandum explains the reasons for those rulings.

By way of background, the SEC's complaint in this action alleges that during the period from 1995 through April 2006, defendant Vitesse Semiconductor Corporation ("Vitesse") engaged in fraudulent revenue recognition practices and stock options backdating misconduct. Compl. ¶ 1. These fraudulent practices were allegedly orchestrated by the four individual defendants: Vitesse's co-founder and CEO, Louis Tomasetta; its

Chief Financial Officer ("CFO") and Executive Vice President, Eugene Hovanec; its Controller and CFO, Yatin Mody; and Manager/Director of Finance, Nicole Kaplan. Id. ¶ 2. Among other things, the Complaint alleges that between September 2001 and April 2006, Tomasetta, Hovanec, Mody, and Kaplan materially inflated Vitesse's reported earnings by immediately recording as revenues the shipments made to Vitesse's largest distributor, NuHo, even though the distributor had an unconditional, but undisclosed, right to return the product. Id. ¶ 2. The effect of this fraud was to materially inflate Vitesse's revenue in its financial statements.

On September 29, 2006, before the instant complaint was filed, the SEC notified NuHo that it was conducting a confidential investigation entitled In the Matter of Vitesse Semiconductor Corp. On April 13, 2007, the SEC issued subpoenas to NuHo for documents relating to Vitesse. Thereafter, NuHo's independent audit committee (the "Audit Committee") hired Gage Spencer & Fleming LLP ("GSF") to conduct an internal investigation into NuHo's relationship with Vitesse. In connection with the internal investigation, GSF interviewed present and former NuHo employees. While conducting these interviews, Laura-Michelle Horgan, an attorney with GSF, took handwritten notes of the interviews. See Affidavit of Laura-Michelle Horgan, dated April 19, 2011 ("Horgan Aff."), ¶ 2. These notes have not been shown or produced to anyone outside GSF, no copies have been made, and the notes have not been reduced to formal

2

interview memoranda. Horgan Aff. ¶ 4. Ms. Horgan also attests that the notes are not a verbatim transcript of the interviews and that the notes have not been shown to any witnesses or endorsed by any witness. Id. ¶ 5. On February 12, 2009, GSF concluded its internal investigation and issued a report to the Audit Committee (the "Internal Report"), which included: (i) a seventy-eight page written summary of GSF and FTI's conclusions; (ii) a Power Point Presentation prepared by GSF summarizing GSF and FTI's conclusions; and (iii) six tables prepared by FTI summarizing its conclusions.

On July 28, 2008, the Audit Committee produced to the SEC documents bates numbered NUHD00001 to NUHD00252 and "an oral summary of the internal investigation's prior interviews of Paul Durando" pursuant to a non-waiver agreement, which stated that the SEC agreed to "maintain the confidentiality of the Confidential Materials pursuant to this agreement" and not disclose them to any third party unless "disclosure is otherwise required by law or would be in furtherance of the Commission's discharge of its duties and responsibilities." Horgan Aff., Ex. C. At the SEC's request, GSF also provided oral interviews -- or "downloads" -- of other witness interviews to the SEC. These downloads were sought by the SEC in connection with their upcoming depositions of NuHo witnesses. Horgan Aff. ¶ 6.

On January 27, 2011, defendants Tomasetta and Hovanec issued subpoenas to GSF and FTI seeking "[a]ll documents that you reviewed,

prepared, used, sent or received in connection with or concerning the Internal Investigation." Tomasetta and Hovanec issued a subpoena to NuHo with the same request on February 1, 2011. On March 4, 2011, NuHo moved to quash the subpoenas issued by defendants Tomasetta and Hovanec to the extent that they sought disclosure of the Internal Report. On March 15, 2011, the Court denied NuHo's motion and, as a result, the Internal Report was produced to Tomasetta and Hovanec subject to a confidentiality agreement. After receiving the Internal Report, which made reference to certain attorney notes taken by GSF in connection with NuHo's internal investigation, Tomasetta and Hovanec sought production of the handwritten notes taken by Ms. Horgan.

As a general matter, materials containing "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative" that were "prepared in anticipation of litigation" are protected from disclosure to third parties. United States v. Adlman, 134 F.3d 1194, 1197 (2d Cir. 1998). See Fed. R. Civ. P. 26(b)(3). However, the protections of the work product doctrine are not absolute. For example, if a party discloses work product materials to an adversary, the privilege is often deemed waived. In re Steinhardt Partners, L.P., 9 F.3d 230, 235 (2d Cir. 1993). In addition, "the disclosure of privileged or otherwise protected materials to the Government may, in certain circumstances, result in a waiver of the privilege or protection." United States v. Treacy, No. 08 Cr. 366, 2009 WL 812033, at *1 (S.D.N.Y. Mar.

4

24, 2009). The Second Circuit, declining "to adopt a per se rule that all voluntary disclosures to the government" result in waiver, see In re Steinhardt Partners, L.P., 9 F.3d 230, 236 (2d Cir. 1993), has held that "rules relating to privilege in matters of governmental investigations must be [crafted] on a case-by-case basis," id., and "applied in a common sense way in light of reason and experience." In re Six Grand Jury Witnesses, 979 F.2d 939, 944 (2d Cir. 1992).

In connection with their motion to compel the production of the handwritten notes, defendants Tomasetta and Hovanec argued that NuHo waived the work product privilege with respect to these notes when it provided oral summaries of the interviews to the SEC. NuHo argued that it provided these summaries in accordance with a non-waiver agreement and that, in any case, providing oral summaries of interviews did not constitute a general waiver of attorney work product privilege that would require the production of handwritten attorney notes.

As an initial matter, the Court concluded that not all of the oral summaries provide by NuHo to the SEC were actually provided pursuant to a non-waiver agreement. In July 2008, NuHo and the SEC entered into a non-waiver agreement covering the "oral summary of the internal investigation's prior interviews of Paul Durando," Horgan Aff., Ex. C, but other oral summaries were not explicitly covered in that non-waiver agreement. And while on March 19, 2009, NuHo entered into a second non-waiver agreement with the SEC that expressly covered "oral summaries of prior interviews," see Marmalefsky Aff., Ex. 6, at least some oral

5

summaries were provided to the SEC before this date. However, even assuming that all the oral summaries were provided pursuant to a non-waiver agreement, that would not end the Court's inquiry into waiver given the absence of a per se rule. See In re Steinhardt Partners, L.P., 9 F.3d 230, 235 (2d Cir. 1993).

After hearing oral argument on NuHo's motion to quash and defendants' motion to compel, the Court concluded that it could not determine whether waiver applied without having a better understanding of the level of detail provided in the oral summaries to the SEC. Specifically, waiver would probably not apply if NuHo merely provided general impressions of the interviews without organizing the presentations "in a witness-specific fashion," but might very well apply if NuHo "orally relayed in substantial part" the contents of witness interviews to the SEC. See United States v. Treacy, 08 Cr. 366 (JSR), 2009 WL 812033, at *2 (S.D.N.Y. March 24, 2009). Thus, in addition to conducting an in camera review of the handwritten notes taken by Ms. Horgan, the Court ordered the SEC to turn over its notes of the "downloads" provided by Ms. Horgan and conducted an in camera review of the SEC's notes.

After comparing Ms. Horgan's notes to the SEC's notes, it became clear to the Court that the oral summaries provided to the SEC were very detailed and, indeed, there were many instances where the SEC's notes matched Ms. Horgan's notes almost verbatim. Thus, the Court concluded that NuHo waived work product privilege with respect to the notes by providing very detailed, witness-specific information to the SEC. While

it is undisputed that NuHo did not actually produce the notes themselves to the SEC, after reviewing the SEC's notes the Court found that NuHo effectively produced these notes to the SEC through its oral summaries. And, as noted in the Court's Memorandum explaining the denial of NuHo's previous motion to quash, while producing privileged materials to the Government will not constitute waiver in all cases, in this case, the SEC -- the very government agency that received the privileged material -- is actually a party to the instant action and thus could use the information produced by NuHo in its case against the defendants. See SEC v. Vitesse Semiconductor Corp., --- F.Supp.2d ----, 2011 WL 1142343, at *3 (S.D.N.Y. 2011). Moreover, as also noted in the Court's previous Memorandum, many of the key allegations in the SEC's complaint against Tomasetta and Hovanec concern Vitesse's relationship with NuHo, the very topic of the Internal Report and the interviews conducted by GSF. See id. Thus, finding that NuHo waived the privilege by providing very detailed oral summaries to the SEC and finding that disclosure was required to "level the playing field," the Court directed NuHo to produce the notes to defendants Tomasetta and Hovanec.

Accordingly, for the foregoing reasons, the Court confirms its May 13, 2011 Order denying NuHo's motion to quash the subpoenas and granting defendants' motion to compel the production of the handwritten notes.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       July 13, 2011

7